# Supreme Court of Florida

_____

No. SC2023-0432
_____

**WILLIAM J. MITCHELL,**
Petitioner,

vs.

**DAVID W. RACE,**
Respondent.

November 7, 2024

SASSO, J.

We initially accepted jurisdiction to review the decision of the Fourth District Court of Appeal in *Race v. Mitchell*, 357 So. 3d 720 (Fla. 4th DCA 2023), based on a certified conflict. *See* art. V, § 3(b)(4), Fla. Const.; *see also* Fla. R. App. P. 9.030(a)(2)(A)(vi). After further consideration, and for the reasons that follow, we conclude that jurisdiction was improvidently granted. We therefore exercise our discretion, discharge jurisdiction, and dismiss this proceeding.

**I.**

This case involves a claim Mitchell brought against Race under the Florida Security of Communications Act, which prohibits, among other things, unlawfully recording phone calls without the consent of all parties and provides civil remedies for violations of its proscriptions. *See* §§ 934.02(1), .02(3), .03(1), .10(1), Fla. Stat. (2019). On appeal, the issue broadly presented is whether a Florida court has personal jurisdiction over a nonresident defendant when the defendant, while out of state, recorded calls with a plaintiff located in Florida.

The parties agree that the issue of personal jurisdiction is guided by the two-step test articulated in *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499 (Fla. 1989).[1] They disagree over its proper application to the facts of this case. Predictably then, the

---

1. There are two requirements for a nonresident defendant to be subject to personal jurisdiction in Florida. First, the complaint must allege sufficient jurisdictional facts to bring the defendant within the scope of Florida's long-arm statute, section 48.193, Florida Statutes (2019). *See Venetian Salami*, 554 So. 2d at 502. Second, there must be sufficient minimum contacts between the defendant and Florida to comply with the Due Process Clause of the United States Constitution. *See id.*

litigation in the underlying proceedings has focused on the issue of personal jurisdiction. But the character of the dispute has morphed between the trial court and the Fourth District.

In the trial court, the parties' argument focused on the first step of the *Venetian Salami* test: assessing whether Race committed a tortious act in Florida. *See* § 48.193(1)(a)2., Fla. Stat. (providing for long-arm jurisdiction over a nonresident that "[c]ommit[s] a tortious act within [Florida]"). As a result, the parties dispensed with any request for an evidentiary hearing regarding the second step of the *Venetian Salami* test: assessing whether Race had sufficient minimum contacts with the state sufficient to satisfy due process concerns. With the dispute framed this way, the trial court conducted (with Race's consent) an expedited hearing solely on the legal issue of whether Race committed a tortious act in Florida.

Subsequently, the trial court entered a final order concluding that Race committed a tortious act in Florida because the alleged "interceptions" occurred in Florida where Mitchell's statements were made. The trial court also found that "based on [the] circumstances and the record before the Court," personal jurisdiction over Race

did not violate the due process component of the *Venetian Salami* test.

On appeal, the parties began debating the due process component in earnest. And this issue—the second step of the *Venetian Salami* test—ultimately formed the basis for the Fourth District's decision. Reversing the trial court's decision, the Fourth District concluded that Race "lacks sufficient minimum contacts with Florida to require him to defend a lawsuit in this state." *Race*, 357 So. 3d at 721. The court reasoned:

> Where a defendant legally records a phone conversation in his home state, and has no other significant contacts with Florida, it offends traditional notions of fair play and substantial justice to require him to appear in Florida to defend against a lawsuit for an alleged violation of the Florida Security of Communications Act.

*Id.* at 723. In doing so, the Fourth District did not address the first step in the *Venetian Salami* test. Even so, the Fourth District then certified conflict with *France v. France*, 90 So. 3d 860 (Fla. 5th DCA 2012), a case addressing only the first step of that test. *See id.* at 864 (holding that an out-of-state resident can commit a tortious act in Florida simply by recording a Florida resident). We accepted jurisdiction based on the Fourth District's certification.

## II.

Article V provides that this Court "may" exercise its jurisdiction over cases from the district courts that certify conflict with another district. There is no question that the Fourth District certified conflict, and we are therefore squarely within our constitutional authority to consider and decide this case. Even so, whether we *should* exercise our discretion to decide this case is a separate question.

There are no fixed constitutional standards guiding this Court's discretionary jurisdiction. In the past though, we have declined to exercise constitutionally authorized jurisdiction in conflict cases when upon closer review of the case, this Court has not been presented with a clear conflict to resolve. *See, e.g.,* *Bollettieri Resort Villas Condo. Ass'n v. Bank of N.Y. Mellon*, 228 So. 3d 72, 73 (Fla. 2017) (dismissing a case because "the certified conflict has been resolved"); *Summit Claims Mgmt., Inc. v. Lawyers Express Trucking, Inc.*, 944 So. 2d 339, 340 (Fla. 2006) (dismissing a case because "upon further review, we determine that no actual conflict exists between the lower courts' opinions in regard to the certified question"); *State v. Fuller*, 887 So. 2d 1236, 1237 (Fla.

2004) (dismissing a case because a subsequent holding eliminated the existence of an actual conflict); *Skinner v. State*, 470 So. 2d 702, 702 (Fla. 1985) (same).

Here, after the benefit of full merits briefing and oral argument, we conclude that because the alleged conflict case addresses a distinct issue from the one decided by the Fourth District, we have been presented with a certified but fictional conflict. What is more, we have been presented with a record that is insufficient for this Court to adequately address the issue the Fourth District did analyze. *See Burke Prods., Inc. v. Access Elecs., LLC*, 311 So. 3d 145, 149 (Fla. 2d DCA 2020) ("Whether the nonresident has those requisite minimum contacts is a fact-specific inquiry.").

In the end, while this case presents many interesting issues, we conclude those issues are largely academic in the context of the unique procedural history of this case. As a result, we exercise our discretion, discharge jurisdiction, and dismiss this proceeding.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.

NO MOTION FOR REHEARING WILL BE ALLOWED.

Application for Review of the Decision of the District Court of Appeal
    Certified Direct Conflict of Decisions

    Fourth District - Case No. 4D22-1979

    (Broward County)

James A. Stepan of Law Offices of James A. Stepan, P.A.,
Hollywood, Florida; and Thomas Hunker of Hunker Paxton Appeals
& Trials, Fort Lauderdale, Florida,

    for Petitioner

James S. Toscano and Rebecca E. Rhoden of Lowndes, Drosdick,
Doster, Kantor & Reed, P.A., Orlando, Florida,

    for Respondent

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor
General, Jeffrey Paul DeSousa, Chief Deputy Solicitor General, and
Robert Scott Schenck, Assistant Solicitor General, Tallahassee,
Florida,

    for Amicus Curiae Attorney General